IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENGINEERED ABRASIVES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN MACHINE PRODUCTS & SERVICE INC., EDWARD C. RICHERME and EDWARD RICHERME, <br><br> Defendants. | Civil Action No. 13-007342 <br><br> Hon. John F. Grady |

### REVISED MOTION TO WITHDRAW AS COUNSEL

Counsel moves this Court for leave to withdraw the appearance of Richard T. Ruzich, Stephen Auten, Jonathan G. Polak, Patricia S. Spratt and Gabriel Reilly-Bates, as counsel of record ("Counsel") for American Machine Products & Service Inc., Edward C. Richerme and Edward Richerme ("Defendants") in this matter, pursuant to Rule 83.17 of the Local General Rules of the United States District Court for the Northern District of Illinois. In support thereof, Counsel states:

### INTRODUCTION

Counsel seek to withdraw their appearance for Defendants pursuant to ABA's Model Rules Rule 1.16(b)(5-7) because Defendants currently owe Counsel's law firm $387,497.98, and have indicated that they have no means to make additional partial payments at the present time. The continued representation would be an unreasonable financial burden upon Counsel's law firm, as the case is only in its beginning stages, and Defendants do not have a source of income sufficient to repay Counsel's law firm. Finally, Defendants have indicated that they are

consulting with bankruptcy counsel, which would increase the risk of nonpayment for Counsel's law firm, for their claims would be discharged in bankruptcy.

## BACKGROUND

Counsel have represented Defendants since February 2014 in two matters, this instant case, and in a parallel case proceeding in the Twelfth Judicial Circuit Court in Will County, case no. 12 CH 901 (the "State Court Case"). In the State Court Case, Plaintiff alleges trade secret violations against the same Defendants as in this case. The claims in the State Court Case overlap with Plaintiff's state court related claims in this case (Count IV – Unfair Competition, Count V – Deceptive Trade Practices, Count VI – Consumer Fraud and Deceptive Trade Practices). In the State Court Case, Defendants' prior counsel Theresa Berkey agreed to the entry of three preliminary injunctions against Defendants (the "State Court Injunctions"), without requesting briefing on the issues and without requesting a hearing. Copies of the State Court Injunctions are attached hereto as Group Exhibit A. Present Counsel attempted to dissolve these injunctions by filing a Motion to Dissolve the State Court Injunctions, but were not successful in obtaining relief. A trial is set in the State Court Case for January 12, 2015.

Counsel filed a motion to withdraw from the State Court Case with Defendants' consent and were permitted to withdraw on June 25, 2014. A copy of the Order allowing Counsel to withdraw from that case is attached hereto as Exhibit B. Plaintiff's counsel did not object to Counsel's withdrawal from the State Court Case.

In the course of Counsels' representation of Defendants in the above captioned case and in the State Court Case, Defendants incurred the following fees and expenses:

|  | **Fees & Exp. Incurred** | **Amounts Paid** | **Cumulative Total** |
|---|---|---|---|
| April 30, 2014 Fees | $123,114.50 | $25,000 | $98,114.50 |

2

| April 30, 2014 Expenses | $2,554.51 | -- | $100,669.01 |
| May 31, 2014 Fees | $102,645.50 | -- | $203,338.02 |
| May 31, 2014 Expenses | $2,172.61 | -- | $205,510.63 |
| June 14, 2014 Fees | $150,763.00 | -- | $356,273.63 |
| June 14, 2014 Expenses | $1,932.57 | -- | $358,206.20 |
| Unbilled Fees | $8,803.50 | -- | $367,009.70 |
| Unbilled Expenses | $20,488.28 | -- | $387,497.98 |
| **TOTALS** | **$412,497.98** | **$25,000** | **$387,497.98** |

This chart was prepared by Counsel after reviewing firm invoices, BIMs and invoices from third-party vendors. Counsel's firm did not segregate the matter numbers for this case and the state court case in its billing system, and thus the amounts reflected above reflect the amount due and owing for both cases. Defendants have incurred $387,497.98 of unpaid obligations.

> **A.  Counsel May Withdraw Their Representation Because Defendants Have Failed to Meet their Obligations to Counsel and the Continued Representation Would Place an Unreasonable Burden on Counsel**

N.D. Ill. Local Rule 83.17 dictates that an "attorney of record may not withdraw . . . without first obtaining leave of court." The Northern District of Illinois adopted the American Bar Association's Model Rules of Professional Conduct on June 2, 2011, which in turn set forth the rules for counsel withdrawing a representation. N.D. Ill. L.R. 83.50. L.R. 83.50 states:

> Applicable disciplinary rules are the Model Rules adopted by the American Bar Association. (the "Model Rules") On any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the [Illinois] Rules of Professional Conduct ("Rules of Professional Conduct"), a lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct, as adopted by the Illinois Supreme Court, and a lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for the state in which the lawyer's principal office is located.

ABA Model Rule 1.16 governs the termination of an attorney's representation because the Model Rules, Rule 1.16 and the Rules of Professional Conduct, Rule 1.16, are identical. Compare Model Rules Rule 1.16 and Rules of Professional Conduct Rule 1.16. Rule 1.16(b) under both rules allows counsel to terminate the representation under numerous grounds:

> (b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:
>
> * * *
>
> (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; **or**
>
> (7) other good cause for withdrawal exists.
>
> (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation. . . .

Model Rule of Professional Conduct, 1.16 (b-c) (emphasis supplied); Rules of Professional Conduct, 1.16 (b-c) (emphasis supplied). The grounds for withdrawing are drafted in the disjunctive: counsel may claim any single ground as a reason for withdrawal.

The leading Seventh Circuit case on a motion to withdraw on the basis of non-payment is *Fidelity Nat. Title Ins. Co. v. Intercounty Nat. Title Ins. Co.*, 310 F.3d 537 (7th Cir. 2002). Counsel for defendants in *Fidelity* had been retained and defendants "promised to pay [counsel] an hourly fee for its services and to reimburse expenses. For some time they kept this promise." *Id.* at 539. However, the defendants began to fall behind on payments, and by the time defense counsel first moved to withdraw, counsel was owed "more than $430,000 in fees and out-of-pocket expenses." *Id.* Judge Conlon denied two motions to withdraw, "making it clear that . . .

[counsel] must represent [defendants] to the bitter end, no matter how much this costs (and no matter how little the [defendants] pay), unless a new lawyer files an appearance on their behalf." *Id.* The Seventh Circuit reversed Judge Conlon's ruling, holding that "[litigants] have no right to free legal aid in civil suits" and recognizing that, under the ABA Model Rules "lawyers are entitled to stop working when clients stop paying." *Id.* at 540 (citing ABA Model Rule 1.16(b)(5)-(6)). The Seventh Circuit held that, both under the rules and the contract between the attorney and the client, the firm is "expressly entitle[d]" to withdraw "if fees are not paid." *Id.* at 541.

In *Amsted Industries v. Buckeye Steel*, Case No. 01 C 3336, 2002 WL 31455958 (N.D. Ill. Nov. 1, 2002), the court also permitted counsel to withdraw for nonpayment of fees. *Amsted Industries* involved a patent infringement action where defense counsel moved to withdraw on the basis of unpaid fees. *Amsted Industries*, 2002 WL 31455958, at *1. The defendant objected to defense counsel's motion to withdraw on the basis that it "has no substitute counsel and that [defense counsel] has no legitimate reason for withdrawal." *Id.* Judge Zagel granted the attorneys' motion to withdraw representation, finding that the law firm had been trying to collect its legal fees for more than a year and the client "fail[ed] to fulfill an agreement or obligation to the lawyer as to expenses or fees." *Id.* (quoting former Local Rule 83.51.16(b)(1)(F)). In support of its motion to withdraw, the law firm submitted materials which demonstrated that the firm had "taken reasonable steps to protect [the client]'s interests" and indicated that the client "may file for bankruptcy." *Id.*

The Defendants have failed to fulfill an obligation to counsel as they have not paid any fees since April 2014. Counsel's law firm is currently owed $387,497.98 by Defendants. The engagement letter between Counsel and Defendants also permits Counsel to withdraw upon

5

nonpayment of fees (the "Engagement Letter"), a copy of which is attached hereto as Exhibit C.[1] Under the engagement letter, fees are to be paid within 30 days of the date of the invoice. Defendants have indicated that they do not have the resources to pay any additional amounts in the future. Counsel have informed Defendants of the necessity of their withdrawal in the event of non-payment and Defendants have consented to counsel's withdrawal, understanding that the withdrawal is due to nonpayment. Thus, under Model Rules Rule 1.16(b)(5) and the Engagement Letter, Counsel should be permitted to withdraw.

Moreover, Counsel should also be permitted to withdraw under Model Rules Rule 1.16(b)(6), because the continued representation will result in an unreasonable financial burden on Counsel. In addition to Defendants' statements that they lack resources to fulfill their obligations to counsel, Defendants' ability to generate income is severely impacted by the three State Court Injunctions. *See* Exhibit A.[2] Much of Defendants' market for its goods and services is comprised of Plaintiff's customers. Counsel estimates that, in the event that the Order of Default against Defendants is vacated, that it would cost an additional $300,000-$400,000 to bring the case to a resolution. In addition, it is unlikely that Defendants would recover their attorney's fees against Plaintiff, unless Defendants prevail against Plaintiff. Counsel for Defendants cannot continue to extend credit to Defendants when the risk of non-payment remains so high, and only increases.

In addition, other good cause exists for withdrawal because Defendants have consulted with bankruptcy counsel and may file for protection soon under the Bankruptcy Code, 11 U.S.C.

---

[1] *See* p. 2: "In the event that our statements are not timely paid, or that payment terms are not agreed upon in advance, we reserve the right to renegotiate the terms of this engagement, to terminate it and withdraw from this or any representation of AMPSI, and/or to pursue our other remedies."

[2] An injunction dated December 28, 2012 stated "[a] preliminary injunction is entered restraining the defendants from contacting any client or customer of Engineered Abrasives in any manner, except that the defendants may complete an outstanding order to Global to sell belts and send collection notices for unpaid invoices." *See* Ex. A, 12/28/12 Injunctive Order.

101, *et seq.* The filing of a bankruptcy petition would render Counsel (and Plaintiff) unsecured creditors of Defendants' bankruptcy estate, and they would share pro rata with other unsecured creditors. Defendants have indicated that any unfavorable judgment against them would necessitate the filing of a bankruptcy petition, as they would not have sufficient money to pay it. In addition, the automatic stay granted under 11 U.S.C. 362, would effectively stop this litigation. Given the likelihood that Defendants will file a bankruptcy petition, Counsel do not wish to extend further credit to Defendants due to the further risk that all debts owed by Defendants will be discharged in bankruptcy. Counsel are not seeking to withdraw for strategic reasons to obtain payment, as Defendants have indicated they do not have additional funds to make any payments and that they may file for bankruptcy protection. Thus, Counsel have good cause for withdrawing their representation under Model Rules Rule 1.16(b).

Finally, good cause exists for Counsel's withdrawal because Defendants have consented to the withdrawal. Unlike in *Fidelity Nat.* or *Amsted Industries*, *supra*, Defendants do not object to Counsel's withdrawal here. Defendants have not only consulted with bankruptcy counsel, but they have also consulted with potential substitute counsel who may be able to file a substitute appearance. Moreover, Plaintiff did not object to Counsel's withdrawal in the State Court Case.

### B. Counsel's Efforts Concerning the Motion to Vacate Order of Default

Counsel have not completed the drafting of the Motion to Vacate the Order of Default on behalf of Defendants. Aside from conducting discovery of Plaintiff and updating their research on *Sims v. EGA Products, Inc.*, 97 F.3d 1454 (7th Cir. 2007), and confirming that *Sims*' holding had not been overturned, Counsel still has substantial work to conduct in drafting the Motion to Vacate. This is in part due to Defendants' indication that they were conferring with bankruptcy counsel and in part due to being contacted by counsel who may file a substitute appearance on behalf of Defendants. Counsel estimate that the cost of preparing the Motion to Vacate to be an

additional $60,000, which would all be lost if Defendants file for bankruptcy. Even if a bankruptcy petition is not filed in the near future, Counsel would be unlikely to recover such additional fees, as Defendants have indicated that they have no additional resources. If retained by Defendants, substitute counsel will be able to draft the Motion to Vacate. In addition, Defendants have had sufficient additional time to protect their interests by either (1) retaining new counsel or (2) filing a petition under the Bankruptcy Code.

The Plaintiff already has some protection from the three State Court Injunctions which prohibit, *inter alia*, contact with Plaintiff's customers. Presumably, this injunction would provide Plaintiff with protection from copyright and trademark infringement as the vast majority of sales of Plaintiff's products are made to its existing customers. Therefore, Plaintiff will not be unduly prejudiced by Counsel's withdrawal. Plaintiff will not be harmed by the additional delay.

WHEREFORE, Counsel respectfully requests this Court grant their Motion and enter an order granting Richard T. Ruzich, Stephen Auten, Jonathan G. Polak, Patricia S. Spratt and Gabriel Reilly-Bates leave to withdraw their appearance as attorney of record for Defendants American Machine Products & Service Inc., Edward C. Richerme and Edward Richerme in this action, and grant other and further relief as this Court deems necessary and appropriate.

Dated: July 9, 2014

Respectfully submitted,

**AMERICAN MACHINE PRODUCTS & SERVICE INC., EDWARD C. RICHERME AND EDWARD RICHERME**

By: /s/ Gabriel Reilly-Bates
One of Their Attorneys

Richard T. Ruzich, Esq. (6238004)
Stephen R. Auten, Esq. (6242454)
Gabriel Reilly-Bates, Esq. (6280979)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, #2800
Chicago, Illinois 60601
Telephone: 312-527-4000
E-mail: (Rruzich@taftlaw.com)
(Sauten@taftlaw.com)
(Gbates@taftlaw.com)

1297773_1