UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENGINEERED ABRASIVES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13 C 7342 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| AMERICAN MACHINE PRODUCTS & | ) |
| SERVICE INC., EDWARD C. RICHERME, | ) |
| and EDWARD RICHERME, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The Court grants Defendants' motion for relief from a final judgment [147]. The Court finds that Engineered Abrasives, Inc. has released the judgment entered against Defendants [119] pursuant to the parties' June 2, 2016 settlement agreement in Case No. 15 C 6983. The Court dismisses the case with prejudice. See statement for further details.

## STATEMENT

Plaintiff Engineered Abrasives, Inc. ("EA"), which designs, manufactures, and services automated shot peening and blast finishing equipment, filed this suit against its former employees Defendants Edward Richerme and Edward C. Richerme, and the company they now operate, Defendant American Machine Products & Service Inc., claiming that Defendants were misrepresenting themselves as EA representatives and unfairly competing with EA. Judge Grady found the Defendants in default, and after an evidentiary hearing, the Court entered judgment in favor of EA in the total amount of $719,814.04. The Court also permanently enjoined Defendants from using certain EA trademarks.

After the Court entered judgment in this case, EA filed a subsequent action against Defendants and Karen Richerme (the "2015 case"). *Engineered Abrasives, Inc. v. Am. Mach. Prods. & Serv., Inc.*, No. 15 C 6983 (N.D. Ill. filed Aug. 10, 2015). The parties settled the 2015 case on June 2, 2016, and the 2015 case was dismissed with prejudice pursuant to the parties' agreed order of dismissal on June 14, 2016. *See* No. 15 C 6983, Docs. 33, 35. Defendants then returned to this Court and filed the present motion for relief from the final judgment on June 30, 2016, contending that EA released the judgment as part of the settlement agreement in the 2015 case.[1] Doc. 147. EA opposes the motion, arguing that the release cannot be read so broadly.[2]

---

[1] Defendants also filed a similar motion in a state court case EA brought against them. That motion remains pending.

The relevant facts surrounding the 2015 case's settlement and the release at issue are as follows:[3] The parties agreed to settle the 2015 case at a June 2, 2016 settlement conference before Judge Mason. The settlement involved a monetary payment of $75,000 from Defendants' insurer to EA, an order permanently enjoining Defendants and Karen Richerme from making false and misleading statements about EA, and a liquidated damages clause providing that Defendants and Karen Richerme would pay $250,000 to EA for any breach of the permanent injunction. The parties incorporated the terms of the settlement into a settlement agreement that EA's counsel provided at the settlement conference. The parties signed the settlement agreement at the settlement conference.

The signed settlement agreement includes a "Mutual Release" clause, which provides, in relevant part:

> EA . . . hereby releases Defendants . . . of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have by reason of any matter, cause or circumstance whatsoever arising or occurring prior to and including the date of the Agreement, including but not limited to the claims and defenses set forth in the [2015 case].

Doc. 147-2 ¶ 8(a). The "Mutual Release" clause further provides, "[t]he releases granted herein are expressly conditioned upon full performance of all the obligations under the Agreement. If any of the Parties hereto breach the Agreement in any respect, the releases in their favor shall be null and void as though it had never taken effect." *Id.* ¶ 8(b).

Before concluding the settlement conference, Judge Mason asked the parties to place the terms of the settlement agreement on the record. Counsel for EA outlined the substantive terms of the agreement, referencing the "written agreement signed by all parties." Doc. 151-2 at 16. Judge Mason then questioned the parties individually to ensure they understood the terms of the settlement. Although no specific mention was made of the mutual release, Judge Mason did state that "there is a written document to reflect other conditions . . . [that] all parties have agreed to" and all parties acknowledged that they did not have any questions about and instead agreed to all the terms and conditions contained in the agreement. *See id.* at 17–21.

---

[2] After Defendants filed this motion, EA filed motions in the 2015 case seeking to enforce the settlement agreement and impose sanctions on Defendants. EA also sought relief from the dismissal order pursuant to Rule 60. The court denied the motions, finding that it lacked jurisdiction to address EA's motion to enforce and for sanctions. No. 15 C 6983, Doc. 53, at 5–7. The court also denied EA's motion for Rule 60 relief, questioning first whether EA could seek such relief after voluntarily dismissing the case but finding that even if such relief were possible, it was not warranted. *Id.* at 8–10.

[3] The Court does not recount the extrinsic evidence submitted by the parties, as this evidence is not relevant to the resolution of the pending motion.

2

Defendants argue that the mutual release clearly and unambiguously released the judgment in this case, warranting relief pursuant to Federal Rule of Civil Procedure 60(b)(5). That rule provides that the Court may relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). EA responds that the release should be read in light of the entire settlement agreement, which demonstrates that the parties intended for the release to apply only to those claims arising out of the 2015 case.[4] *See Paluch v. United Parcel Serv., Inc.*, 8 N.E.3d 506, 510, 2014 IL App (1st) 130621, 380 Ill. Dec. 336 (2014) ("[I]nstead of focusing on one clause or provision in isolation we must read the entire contract in context and construe it as a whole, viewing each provision in light of the other ones.").

The release at issue is governed by contract law and construed against the benefitting party. *Janowiak v. Tiesi*, 932 N.E.2d 569, 585–86, 402 Ill. App. 3d 997, 342 Ill. Dec. 442 (2010). "General words of release are restrained in effect by the specific recitals contained in the document," with the parties' intentions controlling the release's scope and effect. *Id.* at 586. The Court looks to the contract as a whole to determine the parties' intentions, only considering extrinsic evidence if an ambiguity exists. *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667, 144 Ill. 2d 440, 163 Ill. Dec. 510 (1991). Although courts limit general releases to the specific claims contained in the release agreement where the releasing party is unaware of other claims, "where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim." *Janowiak*, 932 N.E.2d at 585 (citing *Whitlock*, 581 N.E.2d at 667).

Although the parties disagree about the scope of the release, this does not make it ambiguous, and indeed, both sides contend that the release's meaning is clear on its face.[5] *See Paluch*, 8 N.E.3d at 510 ("The mere fact that the parties disagree over the contract's interpretation does not establish ambiguity."). Defendants contend that the release clearly covers the judgment here because the only preexisting "debts, . . . liabilities, obligations, damages, costs, [and] attorneys' fees" it could cover stem from the judgment in this case. Doc. 147-2 ¶ 8(a). More importantly, according to Defendants, the release must encompass the judgment here because the parties knew of the judgment when they entered into the release, nullifying any argument that the release is limited by the specific recitals in the settlement agreement. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 715 (7th Cir. 2009) ("A general release typically covers 'all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.'" (quoting *Fair v. Int'l Flavors & Fragrances, Inc.*, 905

---

[4] EA also argues that Defendants' motion is procedurally deficient because it does not include a statement of satisfaction of judgment, citing to Local Rule 58.1. Local Rule 58.1 merely directs the clerk to enter a satisfaction of judgment under certain circumstances, without indicating that such a statement is required in order for the Court to relieve Defendants from a judgment under Rule 60(b)(5). Compliance with Local Rule 58.1 would be impracticable here, where EA does not agree with the relief sought and so would not provide a statement of satisfaction as required of the judgment-creditor, making EA's insistence on compliance disingenuous.

[5] Despite agreeing that the release is unambiguous, both parties submit extrinsic evidence, with EA arguing that the Court should alternatively look at the extrinsic evidence to the extent that the Court finds the release ambiguous. The Court does not consider this evidence, however, as the language of the release is unambiguous.

F.2d 1114, 1116 (7th Cir. 1990))). EA ignores this exception, maintaining that the release cannot have included the judgment because the settlement agreement read as a whole does not mention anything about this case and only specifically deals with the 2015 case. *See Carona v. Ill. Cent. Gulf R.R. Co.*, 561 N.E.2d 239, 203 Ill. App. 3d 947, 148 Ill. Dec. 933 (1990) ("[W]here a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made."). Specifically, EA argues that because the settlement agreement only references the 2015 case and the release itself singles out "the claims and defenses set forth in the [2015 case]," Doc. 147-2 ¶ 8(a), the release covers only those claims and defenses made in the 2015 case and excludes the judgment rendered in this case.

The Court agrees with Defendants. At the time the parties signed the settlement agreement, they knew of the judgment in this case; EA had the same counsel in the 2015 case as in this case and specifically referenced this case and the judgment in the complaint for the 2015 case. *See* No. 15 C 6983, Doc. 1 ¶¶ 20–27. Therefore, the release includes the judgment, which must have—or at least should have—been in the contemplation of the parties at the time they signed the release. *Whitlock*, 581 N.E.2d at 667 (collecting cases); *cf. Heard v. Tilden*, 809 F.3d 974, 979–80 (7th Cir. 2016) (release did not apply to additional claim that parties could not have anticipated when they signed the release). Although the release does not use the word "judgment," it contains no language to suggest that it excludes a judgment from its scope, instead using language that definitively encompasses the judgment here—a debt, liability, and obligation of Defendants (composed of damages, costs, and attorneys' fees) to EA that had arisen prior to the date of the settlement agreement. Doc. 147-2 ¶ 8(a); *see Miller v. Lawrence*, --- N.E.3d ----, 2016 IL App (1st) 142051, ¶ 30 (2016) (release language encompassed claims not specifically mentioned in release where there was no basis to find an "except[ion]" for those claims in the language of the release (alteration in original)). Although the release identifies "the claims and defenses set forth in the [2015 case]," Doc. 147-2 ¶ 8(a), that exemplar is preceded by the phrase "including but not limited to," indicating the intention to be expansive, not limiting, particularly in light of the parties' knowledge of the judgment in this case at the time of signing. *See Darvosh v. Lewis*, 66 F. Supp. 3d 1130, 1135 (N.D. Ill. 2014) (rejecting argument that general release was limited by the listing of specific examples of claims to be released and collecting cases finding that similar "including" phrasing was meant to provide illustrations, not limit the scope of the release).[6] Because the parties knew of the judgment and that judgment falls within

---

[6] The release language in *Carona* and *Whitlock*, the cases EA relies on to argue that the release should be narrowly construed, is distinguishable from that here. The release in *Carona* used limiting language to refer to the incident from which the claim arose, whereas here the release language provides an "illustrative example" of what is being released. *See Darvosh*, 66 F. Supp. 3d at 1136–37. In *Carona*, the release applied to:

> any and all claims, demands, suits, actions, causes of action, and damages whatsoever, which [the plaintiff] now [has] or may in the future have against [the defendant] in consequence, directly or indirectly, of any matter or thing done or suffered to be done by [the defendant] in consequence, directly or indirectly, of any matter or thing done or suffered to be done by any of them prior to and including the date hereof, and *more particularly on account of* [a]n injury/accident/incident that

4

the release's broad scope, the release applies to the judgment, regardless of the fact that it was not specifically mentioned by name. *Janowiak*, 932 N.E.2d at 585; *see also Miller*, 2016 IL App (1st) 142051, ¶ 30 ("[T]he fact that a claim is not specifically listed in a release does not necessarily preclude that claim from having been within the contemplation of the parties and therefore barred."); *Rakowski v. Lucente*, 472 N.E.2d 791, 794, 104 Ill. 2d 317, 84 Ill. Dec. 654 (1984) ("When employing a release as broad as the one used here, any attempt to list the specific types of action included in the release might have detracted from its broad and general scope."). Thus, the Court finds that EA released the judgment and dismisses the case with prejudice.

Date: October 17, 2016  /s/ Sara L. Ellis_____

---

occurred while in the employ of the Illinois Central Gulf Railroad at or near New Orleans, La. on or about the 29th day of July 1983.

*Carona*, 561 N.E.2d at 241–42 (emphasis added). The language "more particularly on account of" narrows the scope of the release in *Carona*, while the language in the release here—"including but not limited to"—is expansive, providing examples of the claims being released. *See Darvosh*, 66 F. Supp. 3d at 1136–37 (distinguishing *Carona*). In *Whitlock*, the court found the release language ambiguous because, as in *Carona*, it referred "particularly" to actions and claims relating to a specific loan, suggesting that the release should be read in a more limited manner, despite the fact that the parties acknowledged that they knew of the existence of claims related to a different loan. *Whitlock*, 581 N.E.2d at 667. This ambiguity required resort to extrinsic evidence. *See id.* ("It is not clear on the face of the release agreement whether the parties intended to limit the release to Loan #2 or to extend it to Loan #1 as well."). No such ambiguity exists here because the release language is not limiting but rather expansive.