In the

# United States Court of Appeals

For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 17-1429

ENGINEERED ABRASIVES, INC.,

                *Plaintiff-Appellant*,

*v.*

AMERICAN MACHINE PRODUCTS
& SERVICE, INC., *et al.*,

                *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-CV-7342 — **Sara L. Ellis**, *Judge*.

_____

ARGUED SEPTEMBER 20, 2017 — DECIDED FEBRUARY 13, 2018

_____

Before MANION AND KANNE, *Circuit Judges*, and MILLER, *District Judge*.[*]

---

[*] The Honorable Robert L. Miller, Jr., of the United States District Court for the Northern District of Indiana, sitting by designation.

MILLER, *District Judge*. The principals of American Machine Products are a father and son who left employment at Engineered Abrasives, Inc., to start a competing business in 2011. Bad blood seems to have marked the companies' relationship ever since, to the apparent benefit of the lawyers who have represented them over years of bitter litigation. This case involves two lawsuits from that history.

In March 2015, Engineered Abrasives won a default judgment against American Machine and its principals for $714,814.04 and injunctive relief for stealing trade secrets and infringing trademarks. Five months later, Engineered Abrasives sued American Machine and its principals again. This time, with the help of the magistrate judge, the parties reached a settlement. American Machine's insurer would pay $75,000 to Engineered Abrasives, and a permanent injunction would be entered against slander by American Machine or its principals with a $250,000 liquidated damages clause accompanying the injunction.

Paragraph 8 of the settlement agreement contains a release provision:

> a. [Engineered Abrasives], on behalf of itself, its parents, subsidiaries, affiliates, officers, directors, employees, agents, successors and assigns, hereby releases [American Machine], their subsidiaries, affiliates, officers, directors, employees, agents, attorneys, shareholders, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description,

> whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have by reason of any matter, cause or circumstances whatsoever arising or occurring prior to and including the date of the Agreement, including but not limited to the claims and defenses set forth in the Action.

A similar release addressed American Machine's claims against Engineered Abrasives. The agreement's Recital A defined "the Action" as Engineered Abrasive's August 2015 suit (the latter of the two suits involved in today's case).

American Machine returned to the district court in the earlier case under Federal Rule of Civil Procedure 60(b), reporting that the settlement covered the March 2015 trademark judgment as well as the new case; Engineered Abrasives contended that it had only settled the new case. The written settlement didn't mention a global settlement.

Engineered Abrasives said it hadn't intended to release the earlier default judgment, and pointed to extrinsic evidence to support its position: Engineered Abrasives' pre-settlement demand letter didn't mention the earlier judgment; the parties didn't discuss the earlier judgment during the settlement conference; the working draft of the settlement agreement didn't contain anything about satisfaction of the earlier judgment; the parties didn't discuss, on the record, satisfying the judgment; the settlement agreement was for a sum just a tenth of the amount of the earlier judgment; and Engineered Abrasives' attorney objected at the first suggestion that the settlement agreement might encompass the earlier judgment.

We can't vouch for the accuracy of those factual assertions because the district court didn't consider them. Applying Illinois law, the district court found the settlement agreement unambiguous and released both the default judgment in the March 2015 case and the judgment in the more recent case. A court deciding whether the parties intended to include other claims in a release can't consider extrinsic evidence unless the contract is ambiguous. *See Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). Engineered Abrasives appeals the district court's ruling, arguing that the settlement agreement is ambiguous and the district court should have considered its extrinsic evidence. Whether a contract is ambiguous is a question of law, so we review without deferring to the district court's opinion. *See Prestwick Capital Mgmt. v. Peregrine Fin. Group*, 727 F.3d 646, 655 (7th Cir. 2013) (*quoting EraGen Biosci., Inc. v. Nucleic Acids Licensing LLC*, 540 F.3d 694, 698 (7th Cir. 2008)) ("If [a] contract is ambiguous, a more deferential standard of review is applied to the interpretation of the terms and factual findings.").

American Machine argues that Engineered Abrasives has waived any argument that the settlement agreement is ambiguous because it claimed in the district court that the agreement was unambiguous, though Engineered Abrasives said it was unambiguously supportive of Engineered Abrasives. What isn't argued in the district court generally can't be argued on appeal either. *Roberts v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997). Although Engineered Abrasives argued ambiguity in the district court as a secondary argument, its argument isn't waived.

Illinois law provides the rule of decision in this diversity case. A court's job in construing a negotiated release under

No. 17-1429 5

Illinois law is to determine what the parties intended. *Miller v. Lawrence*, 61 N.E.3d 990, 997 (Ill. Ct. App. 2016) ("A release will not be construed to include claims that were not within the contemplation of the parties."); *Ainsworth Corp. v. Cenco Inc.*, 437 N.E.2d 817, 822 (Ill. Ct. App. 1982) ("Illinois courts have uniformly held that the scope and extent of a release is controlled by the intent of the parties signing it."). Courts look to the language of the settlement agreement to determine the parties' intent unless the agreement is ambiguous. *See Gladinus v. Laughlin*, 366 N.E.2d 430, 432 (Ill. Ct. App. 1977).

If a settlement agreement contains specific terms as well as general terms, the specific language controls. *Carlisle v. Snap-On Tools*, 648 N.E.2d 317, 321 (Ill. Ct. App. 1995). In seeking the parties' intent, Illinois courts generally disfavor a reading to which a reasonable person would be unlikely to have agreed. *See Bank of Commerce v. Hoffman*, 829 F.3d 542, 548 (7th Cir. 2016). But a court can't rewrite a release to make it objectively more reasonable: if the agreement is unambiguous, "[a] unilateral or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release." *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984).

Illinois courts will look to what each party knew to learn what each party meant: if the releasing party knew of other claims not mentioned in the release, a general release can't foreclose the unmentioned claims, but "where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well." *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d at 667; *accord Janowiak v. Tiesi*, 932 N.E.2d 569, 586 (Ill. Ct. App. 2010).

Each side relies on our precedent. American Machine relies on *Hampton v. Ford Motor Company.*, 561 F.3d 709 (7th Cir. 2009). After Ford employee Collette Hampton filed a charge of sexual harassment with the Illinois Department of Human Rights and the EEOC, she decided to accept a seniority-based reduction in force buyout Ford offered. She signed a waiver that amounted to a release of "any and all rights or claims" she might have against Ford "relating in any way to" her employment or the termination of her employment, and received her $64,429 buyout. The waiver didn't specifically mention sexual harassment claims. Ms. Hampton later received her right-to-sue letter and sued Ford under Title VII for sexual harassment. We held that the waiver was unambiguous despite not mentioning the Title VII claim. We relied on *Fair v. International Flowers & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990), for the proposition that a general release typically covers all claims a party knows or easily could have discovered; Ms. Hampton already had filed an administrative claim with state and federal agencies. In addition to the waiver's broad language extinguishing existing and future claims, the waiver specifically preserved any claims Ms. Hampton might have had under the Age Discrimination in Employment Act, showing that the parties knew how to exclude claims that weren't meant to be part of the release. Unable to find a "reason to believe that the parties 'couldn't have meant what they seem to have said,'" 561 F.3d at 715 (*quoting Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 568 (7th Cir. 1995)), we found no ambiguity that would open the door to extrinsic evidence.

Engineered Abrasives points to *Bank of Commerce v. Hoffman*, 829 F.3d 542 (7th Cir. 2016), in which the Bank of Commerce's predecessor in interest had loaned money to Kenneth

Hoffman and his wife; Mr. Hoffman also had guaranteed a $900,000 loan from the bank's predecessor. The Hoffmans entered into a settlement agreement with the bank, and the bank released their $157,000 loan in exchange for three pieces of realty. A few months later, the bank's predecessor sued Mr. Hoffman on the loan he had guaranteed. Mr. Hoffman claimed the release given in the settlement of the $157,000 loan encompassed his obligations on the $900,000 loan, as well. We held the contract ambiguous because the $157,000 loan was the only indebtedness mentioned in the agreement, but the release's language, if read alone, was sweeping enough to forgive any indebtedness the Mr. Hoffman might have had to the bank.

But the ambiguity in the *Hoffman* case arose not from a single release provision, as is found in the Engineering Abrasives agreement. One part of the *Hoffman* settlement agreement limited the release to liability arising from "the Loan Documents or the Properties," and defined that phrase as meaning the properties that secured the $157,000 loan. The *Hoffman* agreement went on to say it released the Hoffmans "from any and all liabilities … including, but not limited to, those arising out of … the Loan Documents … or the Properties … ." This broader release is nearly identical to the provision at issue between Engineered Abrasives and American Machine Products. The ambiguity we identified in *Hoffman* arose, not from the sweeping language of the "any and all liabilities" provision, but rather from the conflict between the narrower and broader provisions. We explained that a contract with conflicting release provisions is ambiguous under Illinois law: "The Illinois courts have repeatedly examined contracts with multiple release statements, where the 'general language is inconsistent and conflicts with the specific language.' …

[T]hese contracts are deemed ambiguous." *Hoffman*, 829 F.3d at 547 (*quoting Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. Ct. App. 1997)).

The only release provision in the Engineered Abrasives-American Machine Products settlement agreement is quite broad, like the one held unambiguous in *Hampton v. Ford Motor*:

> any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have by reason of any matter, cause or circumstances whatsoever arising or occurring prior to and including the date of the Agreement, including but not limited to the claims and defenses set forth in the Action.

*See Hampton*, 561 F.3d at 712.

The settlement agreement contains no other release provision that might create an ambiguity. The clause is unambiguous and, as it says, releases all claims and liabilities between the parties—including the earlier default judgment.

An interesting discussion could address why Engineered Abrasives would have released a $714,000 judgment for a payment of $75,000 and an injunction. Perhaps, as American Machine Products' attorney suggested at oral argument, it was due to the long history of disputes and litigation between the parties. Or perhaps not. But without an ambiguity, the

parties' reasons are outside the scope of a court's inquiry. We must enforce the release as the parties agreed.

Accordingly, the judgment of the district court is AFFIRMED.